**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No. 10-cv-02250-REB

TROY ALLEN SHORT,

      Applicant,

v.

JOHN DAVIS, Warden, and
JOHN W. SUTHERS, the Attorney General of the State of Colorado,

      Respondents.

---

**ORDER DENYING APPLICATION FOR A WRIT OF HABEAS CORPUS**

---

**Blackburn, J.**

      This matter is before me on the **Application for a Writ of Habeas Corpus**

**Pursuant to 28 U.S.C. § 2254** ("Application") [#3][1] filed September 15, 2010, by

Applicant Troy Allen Short.  Respondents answered the Application [#52], and Applicant

filed a traverse [#54].

      As Applicant is proceeding *pro se,* I must construe his pleadings liberally and

hold him to a "less stringent standard." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th

Cir.1991) (citing *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972)).   However, I may not

act as an advocate for the Applicant.

      After reviewing the pertinent portions of the record in this case including the

---

[1] "[#3]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

Application, the Answer, the Traverse, and the state court record [#43], I conclude that

the Application should be denied. Thus, I now enter the following finds of fact,

conclusions of law, and orders.

## I.     Background

Applicant was charged with second degree burglary of a dwelling and theft

between $500 and $15,000 in Case No. 05CR600 in the Fremont County District Court.[2]

The Colorado Court of Appeals summarized the facts in Applicant's case as follows:

> The victim arrived home in the middle of the day to find a van
> parked in her driveway.  The driver said he was looking for a home where
> puppies were for sale.  He honked the horn, and defendant appeared from
> the back of the house and got into the passenger van.  Before leaving,
> defendant and the driver discussed with the victim where the puppies
> might be.
>
> The victim entered her home and discovered the glass door in the
> back of the house was shattered and her belongings were in disarray.
> She called the police and followed the van in her car.  She caught up with
> the van on the highway, and she and the van pulled over to the side of the
> road.  The victim accused the two men of robbing her, and both men
> denied it.  Defendant then exited the van and ran away.
>
> When the police arrived, they took the driver into custody, but did
> not find defendant.  They did not find any stolen items in the van.  The
> driver identified defendant in a photographic lineup and told the police he
> did not know defendant intended to break into the victim's house.  The
> police arrested defendant at his home, a few blocks from where they
> located a vehicle reported stolen the day after the crimes were committed
> in this case.  The driver testified that he saw defendant driving that
> vehicle.
>
> The police did not find defendant's fingerprints at the scene and did
> not match the footprints in the snow around the victim's home to
> defendant.  At trial, defendant maintained his innocence and alleged that a
> third person, a drug dealer who previously lived in the same apartment

---

[2] This general introductory background is largely taken from the uncontested statement
of facts in the Respondents' Answer.

complex as defendant, had committed the crimes.

*People v. Short*, 07CA0227 at 1-2 (Colo. App. Oct. 1, 2009) (unpublished opinion) (Pre-Answer Resp. at Ex. D).

On October 27, 2006, Applicant was convicted by a jury of second degree burglary and theft.  Pre-Answer Resp. Ex. A, p. 7.  On December 19, 2006, Applicant was sentenced to twelve years in the DOC for the burglary charge and to a consecutive five year sentence for the theft charge.  *Id.* at 6.  After the Colorado Court of Appeals affirmed his conviction on October 1, 2009,  Applicant petitioned for certiorari review, which the Colorado Supreme Court denied on February 8, 2010.

Applicant then filed the instant Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 in this Court on September 15, 2010.  He filed a Supplement to the Application on October 22, 2010.  In the Application, Applicant asserts the following claims:

> 1(a). The trial court erred in denying his motion to substitute counsel based on his assertions that there had been a complete breakdown in communication.
>
> 1(b). Applicant received ineffective assistance of counsel as a result.
>
> 2. Applicant's Fourteenth Amendment rights to due process and equal protection were violated when the trial court allowed a police officer to testify as to why fingerprint evidence might have been absent from the crime scene.

On October 26, 2010, the Honorable Boyd N. Boland, United States magistrate judge for the United States District of Colorado, entered an order directing Respondents to file a Pre-Answer Response and address the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies under 28 U.S.C. §

3

2254(b)(1)(A).  On November 15, 2010, Respondents filed a Pre-Answer Response.

Applicant filed a Reply on November 30, 2010.

     In the Pre-Answer Response, Respondents asserted that Subclaim 1(a) was

exhausted; Subclaim 1(b) was not exhausted, but a state court remedy exists; and

Claim 2 was unexhausted and procedurally barred.

     On January 10, 2011, magistrate judge Boland agreed that Subclaim 1(b) was

not exhausted, because Applicant failed to raise it in the state court as an independent

claim.  *See* Pre-Answer Resp. at Ex. B, p. 14-20.  Magistrate judge Boland also noted

that a state court remedy may still exist for Applicant pursuant to Colo. Rev. Stat. §16-5-

402(1), which allows three years for a defendant challenging a class 3 or 4 felony

conviction to seek relief by motion under Colorado Rule of Criminal Procedure 35(c).

Finally, Magistrate Judge Boland found that Claim 2 was unexhausted, but was

procedurally defaulted because Applicant did not raise Claim 2 as a federal

constitutional issue in the state courts.  *See* Pre-Answer Resp. at Ex. B, p. 21-26.

Therefore, magistrate judge Boland concluded that the Application was asserting both

exhausted and unexhausted claims, and was subject to dismissal as a mixed petition

pursuant to *Rose v. Lundy*, 455 U.S. 509, 522 (1982).

     Magistrate judge Boland ordered Applicant to show cause why the Application

should not be denied as a mixed petition.  Applicant was informed that, in order to avoid

dismissal of a habeas application as a mixed petition, an applicant may elect to dismiss

any unexhausted claims and pursue only those claims for which state remedies already

have been exhausted.

     Applicant failed to submit a response to the January 10, 2011, Order to Show

Cause.  Accordingly, the Honorable Judge Zita L. Weinshienk, Senior United States District Judge for the United States District of Colorado, dismissed the action as a mixed petition on February 22, 2011.  Judgment also entered on February 22, 2011.

On March 2, 2011, Applicant filed a Motion to Reconsider pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.  In the Motion to Reconsider, he asserted that he did not receive the Court's January 10 Order to Show Cause, and, therefore, was deprived of his opportunity to respond.  On review of the file, Senior Judge Weinshienk determined that the Clerk of the Court had inadvertently failed to mail the January 10 Order to Show Cause to Applicant.  Finding that Applicant had been deprived of his right to respond to the Order to Show Cause due to a mailing error outside of his control, Senior Judge Weinshienk granted the Motion to Reconsider.  Accordingly, the Clerk of the Court was directed to reopen the case, and Applicant was again provided thirty days to respond to the Order to Show Cause.

On March 28, 2011, Applicant filed a response titled "Motion to Dismiss Claim 1(b) and Claim 2."  In the response, Applicant conceded that Claims 1(b) and 2 were not exhausted, and asked to be allowed to proceed only with exhausted Claim 1(a). Therefore, on April 8, 2011, I entered an order that dismissed Claims 1(b) and 2, and directed Respondents to file an Answer that fully addressed the merits of Claim 1(a).

## II.   Legal Standard

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court.  *See Estelle v. Mcguire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "When a federal district court reviews a state prisoner's habeas petition pursuant to 28

U.S.C. § 2254 it must decide whether the Applicant is in custody in violation of the

Constitution or laws or treaties of the United States.  The court does not review a

judgment, but the lawfulness of the Applicant's custody *simpliciter*."  *Coleman v.*

*Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted).  The

exhaustion of state remedies requirement in federal habeas cases dictates that a state

prisoner must "give the state courts one full opportunity to resolve any constitutional

issues by invoking one complete round of the State's established appellate review

process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Accordingly, based on

denial of certiorari review by the Colorado Supreme Court in Applicant's case, habeas

review in this Court is concerned with the proceeding in the Colorado Court of Appeals

which was the final substantive proceeding in the state appellate review process.

Because the Application was filed after April 24, 1996, the effective date of the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), that statute governs

the Court's review. *Cannon v. Mullin,* 383 F.3d 1152, 1158 (10th Cir. 2004) (citing

*Rogers v. Gibson,* 173 F.3d 1278, 1282 n. 1 (10th Cir.1999)).  Under AEDPA, a district

court may only consider a habeas petition when the Applicant argues that he is "in

custody in violation of the Constitution or laws or treaties of the United States."  28

U.S.C. § 2254(a).  The grounds for granting a writ of habeas corpus are very limited: "a

writ of habeas corpus . . . shall not be granted with respect to any claim that was

adjudicated on the merits in State court proceedings unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United

States; or (2) resulted in a decision that was based on unreasonable determination of

6

the facts in light of the evidence presented in the state court proceeding." *Id.* §

2254(d)(1)-(2); *see also Hale v. Gibson*, 227 F.3d 1298, 1309 (10th Cir. 2000) (citation

omitted).

     A state court decision is "contrary to" clearly established Federal law if it "'applies

a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a different result from [Supreme Court]

precedent.'" *Price v. Vincent,* 538 U.S. 634, 640 (2003) (quoting *Williams v. Taylor,* 529

U.S. 362, 405-06 (2000)).  A state court decision involves an "unreasonable application"

of clearly established Federal law when "'the state court identifies the correct governing

legal principle from [the Supreme] Court's decisions but unreasonably applies that

principle to the facts of the Applicant's case.'" *Lockyer v. Andrade,* 538 U.S. 63, 75

(2005) (quoting *Williams,* 529 U.S. at 413). "The 'unreasonable application' clause

requires the state court decision to be more than incorrect or erroneous . . . . The state

court's application of clearly established law must be objectively unreasonable." *Id.*

(citing *Williams,* 529 U.S. at 409-10, 412).  A "'federal habeas court may not issue the

writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly.'"

*Id.* (quoting *Williams,* 529 U.S. at 411). Finally, when analyzing a petition, all

determinations of factual issues by the state court are presumed to be correct, and the

Applicant has the "burden of rebutting the presumption of correctness by clear and

convincing evidence." 28 U.S.C. § 2254(e)(1).  "[W]hether a state court's decision was

unreasonable must be assessed in light of the record [that court] had before it." *Holland*

*v. Jackson*, 542 U.S. 649, 651-52 (2004) (*per curiam*) (citations omitted).

## III.   Discussion

Claim 1(a) is the only claim remaining at issue in this action.   In this claim,

Applicant asserts that he had a "severe and pervasive conflict with appointed counsel."

Application at 5.   He argues that he didn't trust counsel because counsel lied to him,

disliked him, attempted to "railroad" him, used foul language, and failed to do the

necessary investigation in his case.[3]   Supplement to Application (Docket No. 12) at 3-5.

In addressing this claim, the appellate court concluded:

> An indigent criminal defendant is entitled to effective appointed
> counsel, but not to counsel of his or her choice.   *People v. Arguello*, 772
> P.2d 87, 92 (Colo.1989).   When a defendant objects to court-appointed
> counsel, the trial court must inquire into the reasons for the dissatisfaction.
> *Id.*   The court must determine whether the defendant has a well-founded
> reason for believing that his attorney cannot or will not completely
> represent him.   *See People v. Jenkins*, 83 P.3d 1122, 1126 (Colo. App.
> 2003).

> If the defendant establishes good cause, such as a conflict of
> interest or a complete breakdown of communication, the court is required
> to appoint substitute counsel.   *See Arguello*, 772 P.2d at 94; *Jenkins*, 83
> P.3d at 1126.   However, the court may deny a defendant's request for
> substitute counsel if there is a reasonable basis for concluding the
> attorney-client relationship has not so deteriorated that counsel could not
> provide effective assistance.   *Jenkins*, 83 P.3d at 1126.

> Here, defendant sent a pro se letter to the trial court requesting
> appointment of substitute counsel.   He asserted that counsel intended to
> "sell [him] out and have him railroaded"; lied to him and acted as though

---

[3]In the Supplement to the Application, Applicant includes additional arguments related to
his counsel's allegedly deficient performance leading up to and during trial.   However, these
claims were not presented to the state courts, and I previously dismissed Applicant's claims of
ineffective assistance of counsel as unexhausted.   Therefore, I have limited my discussion of
Applicant's allegations to the claim of a complete breakdown in communication that was
presented to the state courts in Applicant's opening brief on direct appeal.   *See* Pre-Answer
Response (Doc. No. 15) at Ex. B, p. 14-20.

defendant were lying; used "foul language"; and showed "indifference" to his requests related to investigation of witnesses.

The trial court held a hearing on defendant's request for substitute counsel.  The court noted that several of the issues raised by defendant's allegations involved matters out of counsel's control – whether the prosecutor could amend the information, the jail conditions, and whether defendant had received medication.  The court noted that counsel had correctly stated that defendant was charged with burglary (not breaking and entering in this state) and the potential penalties for that crime, and the court advised defendant he would receive a preliminary hearing that day.

Defendant told the court that counsel had not made an effort to find the person who committed the crime, that there was a conspiracy against him, and that he wanted to die.  Trial counsel stated there had been a "deterioration of the attorney-client relationship" and that defendant had been on a hunger strike and had not eaten anything for more than three weeks, and he raised the issue of defendant's competency.  Counsel also stated that defendant had raised the issue of whether he could effectively represent defendant.  The trial court did not rule on the motion and, instead, ordered a competency evaluation of defendant.

Later the day of the hearing, defendant filed a "Motion to Dismiss Court Appointed Public Defendant [sic} and Appoint Private Counsel," followed by a motion for habeas corpus asserting that counsel had lied to him.  The trial court did not rule on the former and denied the latter. Shortly thereafter, the trial court reviewed defendant's competency evaluation and found he was competent to proceed.

Approximately one month later, defendant filed an "Emergency Motion for Alternate Defense Counsel" and supplementary pleadings. Defendant reiterated many of his assertions about trial counsel.  He alleged counsel had done "very little investigative work," belittled and patronized him, did not hide that the outcome of his case was "predetermined," failed to respond to his letters or phone calls, and spent only a total of fifty-five minutes with him.  He also complained about the conditions and security of his confinement.

At a hearing, defendant stated he and counsel had "irreconcilable differences," counsel had not done enough investigation, and he did not trust counsel, but he did not allege any specific facts or examples of what counsel had or had not done.  The trial court denied defendant's request for substitute counsel.

We perceive no abuse of discretion.  As the trial court noted, some of defendant's contentions involved matters over which counsel had no control, such as the conditions of confinement, or were matters within defendant's own authority, such as whether defendant could be "railroaded" into going to trial or pleading guilty.  Other matters, however, were within the purview of defense counsel and involved strategic decisions for counsel.  *See Arko v. People*, 183 P.3d 555, 558 (Colo. 2008); *Steward v. People*, 179 Colo. 31, 34, 498 P.2d 933, 934 (1972). Further, the record shows that counsel visited defendant in person on five occasions to review discovery, complete investigatory reports, and discuss defense theories.  Based on the record before us, we cannot conclude that the trial court's ruling was manifestly arbitrary, unreasonable, or unfair.

*People v. Short*, 07CA0227 at 2-6.

To warrant a substitution of counsel under federal law, a defendant "'must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict.'" *United States v. Padilla*, 819 F.2d 952, 955 (10th Cir. 1987) (§ 2255 action) (citing *McKee v. Harris*, 649 F.2d 927, 931 (2nd Cir. 1981)); *see also United States v. Johnson*, 961 F.2d 1488, 1490 (10th Cir. 1992) (motion to withdraw on basis that defendant believed his attorney was intimidated by the court and could not continue to act zealously in his defense denied because defendant did not show a conflict of interest, a breakdown in communication, or an irreconcilable conflict).  However, there is no absolute right to counsel of one's choice.  *See United States v. Peister*, 631 F.2d 658, 661 (10th Cir. 1980).

Here, Applicant asserts that he is entitled to relief based on a "complete breakdown in communication" with his counsel.  Supplement at 1.  "A complete breakdown in communication between an attorney and client may give rise to a presumption of ineffectiveness."  *Romero v. Furlong*, 215 F.3d 1107, 1111 (10th Cir. 2000).  To prove a complete breakdown in communication, a habeas applicant needs to

10

demonstrate that there was a severe and pervasive conflict with his attorney, or evidence of minimal contact with the attorney rendering meaningful communication impossible. *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002). In addition, Tenth Circuit precedent directs the habeas court to examine: (1) whether the petitioner made a timely motion to request new counsel; (2) whether the trial court adequately inquired into the matter; (3) whether the conflict between the petitioner and his attorney had resulted in a total lack of communication; and (4) whether the petitioner had substantially and unjustifiably contributed to the breakdown in communication. *See Romero*, 215 F.3d at 1113. To be entitled to habeas relief, the "breakdown in communication . . . cannot be the result of a defendant's unjustifiable reaction to the circumstances of his situation." *Id.* at 1114.

Applicant argues that counsel lied, used foul language, called him a liar, failed to investigate the whereabouts of a third party that may have committed the crime, and failed to interview potential witnesses. Supplement at 4-5. He also asserts that counsel did not visit him frequently, and failed to spend a significant amount of time discussing the case with him. *Id.* at 5. However, Applicant fails to show that his disagreements with counsel created a complete breakdown in communication. Instead, the evidence supports the conclusion that Applicant and trial counsel maintained adequate communication.

As required by *Romero*, 215 F.3d at 1113, the trial court twice inquired into the reasons for Applicant's request to appoint substitute counsel. On February 1, 2006, during a preliminary hearing, the trial court addressed Applicant's first motion for substitute counsel. *See* Trial Court Transcript, 2/1/2006, p. 3. Applicant argued that

11

counsel was ineffective because he waived the preliminary hearing, failed to object to

amendment of the charges, failed to protect Applicant from threats by other inmates,

and failed to reduce his bond.  *Id.* at 3-4.  The trial court responded by noting that the

preliminary hearing had not been waived and that the prosecutor was allowed to amend

the charges, so any objection would be futile.  *Id.*  The trial court also noted that

Applicant's counsel was unable to control the behavior of other inmates, and that

Applicant's request for reduced bond would be addressed later in the hearing.  *Id.*

Applicant then stated:

> You're going to railroad me, and all I want to do at this point is just die
> because I'm not going to let you railroad me and that's all that you intend
> to do.  I believe you are all in a conspiracy.  That woman there, that cop
> there, this guy, they put all them together, he gave me years, years, and
> years and I wasn't even the person who committed the crime.

*Id.* at 6.  Applicant's counsel then raised the question of Applicant's competency,

stating:

> So I'd raise the issue of competency as to Mr. Short based on the fact that
> he hasn't eaten in - - I do believe January 8th is what the jail told me - -
> someone at the jail, the 6th or the 8th, and based on the statements that
> he is depressed and wants to die, which he seems suicidal at this point,
> which would suggest to me that he is at this point incapable of
> participating in his own defense by assisting counsel.

*Id.* at 7.  Thereafter, the trial court ordered a competency evaluation of Applicant.  *Id.* at

12.

On June 5, 2006, the trial court received a report from the Colorado Mental

Health Institute, which indicated that Applicant was competent to proceed with trial.  *See*

Trial Court Transcript, 6/5/2006, p. 2.  The trial court then addressed the second motion

to substitute counsel filed by Applicant and again allowed Applicant to discuss  his

dissatisfaction with counsel.  Applicant asserted that counsel had lied to him, but he did

not provide any specific instances when counsel had been dishonest.  *Id.* at 4.  He

stated:

> I feel that I am being railroaded, okay? And I don't trust Mr. Zettler.
> I don't think that he has done anything substantial in this case.  He hasn't
> - - thus far he hasn't investigated except to the - - he's called - - he's had
> somebody in his office call my wife and a neighbor upstairs.
>
> There are so many people, you know.  There are so many
> witnesses that need to be contacted.  There's just - - there's so many
> things that haven't been done and it's as if, you know, Mr. Zettler doesn't
> have too much concern about what happens to me, you know?

*Id.* at 8-9.

Later during the hearing, Applicant also raised the issue that counsel had failed

to show him the discovery, and also failed to meet with him.  Applicant's counsel

stated:

> Your Honor, according to my file notes on January 11, 2006, I advised
> Applicant and reviewed discovery on January 18th.  I visited him again
> and file notes state advised him of discovery, completed an investigative
> report - - an investigation request on the 21st of January, visited again on
> January 31st, visited for one hour on March 28th of 2006, and then visited
> again to discuss additional theories of defense and discovery on June
> 2nd, 2006.

*Id.* at 15-16.

After listening to Applicant's concerns regarding counsel, the trial court

responded:

> [Y]ou say that you think that Mr. Zettler is inadequate.  You're going
> to have to tell me what he's done that's inadequate, if you want to file it.
> Secondly, you've told me that you don't trust him.  Well, that's something
> under your control, not his.  You've told me that he wants to railroad you.
> Nobody is going to railroad you because it'll be up to you completely, Mr.
> Short, whether you go to trial or whether you enter into a plea agreement.

> If you want to go to trial, Mr. Zettler goes to trial. He doesn't have a
> choice in that. That's completely under your control. If you go to trial, at
> that point he will do whatever it is that he does and it'll either be adequate
> or it won't, but I'm not going to at this point in time say that he would not
> be prepared to proceed to trial if we were at trial.
>
> At the present time, there was probably not much he could do,
> waiting for the report regarding your competency, which was sort of
> precipitated by your choice to go without food or water. I mean, that's
> what got you to the state hospital initially. That wasn't Mr. Zettler. That
> was you.

*Id.* at 9-10.

Having reviewed the state court record, I find that the trial court adequately

inquired into Applicant's requests for substitute counsel, as required by *Romero*, 215

F.3d at 1113. After listening to Applicant's concerns with counsel, the trial court found

that Applicant failed to provide any specific grounds for his dissatisfaction. Therefore,

the trial court correctly found that Applicant failed to establish that he was entitled to

substitute counsel. In this case, I find that Applicant's assertions to the trial court do not

establish a complete breakdown of communication, only that Applicant and trial counsel

disagreed about trial strategy and how to proceed with the case. However, "[t]he Sixth

Amendment provides no right to counsel blindly following defendant's instructions."

*Padilla*, 819 F.2d at 956 (citing *McQueen v. Blackburn*, 755 F.2d 1174, 1178 (5th Cir.

1985)). Further, "[w]hether to raise a particular defense is one aspect of trial strategy,

and informed strategic or tactical decisions on the part of counsel are presumed correct,

unless they were completely unreasonable, not merely wrong." *Anderson v. Attorney*

*Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) (internal quotation marks and

citation omitted). Here, Applicant has made no showing that counsel's decision not to

call contact certain people as witnesses was not based on a valid strategic choice. *See*

14

*Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002) (finding that defendant bears "the burden of showing that counsel's action or inaction was not based on a valid strategic choice.").

Further, the mere fact that Applicant did not like his attorney does not, standing alone, establish a complete breakdown in communication. Indeed, competent representation is what the Sixth Amendment guarantees; it does not guarantee a meaningful relationship with counsel. *Morris v. Slappy*, 461 U.S. 1, 14-15 (1983). There is simply no evidence in the record demonstrating that any animosity between Applicant and his trial counsel resulted in such deterioration of their attorney-client relationship that it jeopardized Applicant's right to effective assistance of counsel. Leaving aside the allegations of ineffective assistance of counsel during trial, which are not properly before the Court, Applicant does not point to any specific instances in the record demonstrating that counsel lied to him, made derogatory statements to him, or otherwise provided any reason for Applicant to mistrust him. Moreover, as the state court pointed out, much of the delay during the pre-trial period, and problems with communication between Applicant and his counsel, may have been precipitated by Applicant's decision to engage in a three-week hunger strike. Indeed, Applicant may have created an antagonistic relationship with counsel when there was simply no reason for doing so. As such, any breakdown in communication that occurred appears to have been "the result of a defendant's unjustifiable reaction to the circumstances of his situation." *Romero*, 215 F.3d at 1114.

After reviewing the record, I find that the Colorado Court of Appeals applied the appropriate factors and did not reach an unreasonable conclusion. Accordingly, I find

15

that the Colorado Court of Appeals' conclusion that the trial court did not improperly

deny Applicant's motion for substitute counsel is not an unreasonable application of

Supreme Court precedent, nor an unreasonable determination in light of the facts

presented.  Thus, Applicant is not entitled to habeas relief on this claim.

IV.    **Conclusion**

**THEREFORE, IT IS ORDERED** as follows:

1.    That applicant Troy Allen Short's **Application for a Writ of Habeas Corpus**

**Pursuant to 28 U.S.C.  § 2254** [#3] is **DENIED.**

2.    That no certificate of appealability will issue because Applicant has not made

a substantial showing of the denial of a constitutional right; and

3.    That this case is **DISMISSED WITH PREJUDICE.**

Dated August 23, 2011, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge